**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janet Susan McCormick, | No. CV-20-01780-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff's application for disability insurance benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 28, "Pl. Br."), Defendant Social Security Commissioner's Response Brief (Doc. 31, "Def. Br."), and Plaintiff's Reply Brief (Doc. 34, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 19, "R.") and now reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

I.      Background

Plaintiff filed an application for disability insurance benefits on March 17, 2017. (R. at 192.) Her claim was denied initially on August 15, 2017, and upon reconsideration on March 6, 2018. (R. at 113, 121.) Plaintiff requested a hearing regarding her claim and appeared before an ALJ on December 9, 2019. (R. at 34-72.) On January 21, 2020, the ALJ issued a decision concluding that Plaintiff was not disabled. (R. at 13-27.) On July 14, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's

decision as the agency's final decision.  (R. at 1.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties.  Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: obesity, sleep apnea, osteoarthritis, degenerative joint disease, fibromyalgia, history of right knee replacement, carpal tunnel syndrome, cubital tunnel syndrome, neuropathy, foot abnormalities, hypertension, and thyroid abnormality.  (R. at 16.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled.  (R. at 27.)  The ALJ found that Plaintiff did "not have an impairment or combination of impairments that met or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (R. at 18.)  Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"), finding Plaintiff had the RFC:

> to perform light work, as defined in 20 CFR 404.1567(b), that does not require climbing of ladders, ropes, or scaffolds; that does not require more than occasional stooping, kneeling, crouching, or crawling; that does not require more than frequent balancing or climbing of ramps or stairs; that does not require more than frequent handling or fingering; that does not require concentrated exposure to vibration or pulmonary irritants; and that does not require any exposure to hazards or extreme temperatures.

(R. at 19.)  Given this RFC determination, the ALJ concluded that Plaintiff was "capable of performing past relevant work as an Assistant Financial Director and User Support Analyst as they are generally performed."  (R. at 25.)  Thus, the ALJ determined that Plaintiff was not disabled.  (R. at 26.)

II.    Legal Standard

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.  *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*,

495 F.3d 625, 630 (9th Cir. 2007).    Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.    *Id.*    "'Substantial evidence' means 'more than a scintilla,' but 'less than a preponderance.'"    *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."    *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process.    20 C.F.R. § 404.1520(a).    The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five.    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).    At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity.    20 C.F.R. § 404.1520(a)(4)(i).    At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.    20 C.F.R. § 404.1520(a)(4)(ii).    At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.    20 C.F.R. § 404.1520(a)(4)(iii).    If so, the claimant is automatically found to be disabled.    *Id.*    At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work.    20 C.F.R. § 404.1520(a)(4)(iv).    If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v).    If not, the claimant is disabled.    *Id.*

III.    Analysis

Plaintiff's opening brief raises two arguments.    First, Plaintiff argues the ALJ erred by rejecting her symptom testimony.    (Pl. Br. at 14-23.)    Second, Plaintiff argues the ALJ erred by rejecting LPC Deana Charter's ("LPC Charter") opinions.    (Pl. Br. at 23-25.) Plaintiff contends the remedy for these errors is to remand for an award of benefits pursuant

to the "credit-as-true" rule.  (*Id.* at 26-27.)  The Commissioner, in turn, concedes that reversal is warranted but argues the remand should be for further proceedings.  (Def. Br. at 1-2.)  For the following reasons, the Court agrees with the Commissioner that the proper form of remand here is a remand for further proceedings, not for an award of benefits.

>    1.    **The ALJ Did Not Err When Discrediting Plaintiff's Symptom Testimony**

Plaintiff asserted in her "Disability Report" that she stopped working on January 1, 2017, "[b]ecause of my condition[s]."  (R. at 220.)  Plaintiff elaborated in this report that "I was let go from my job.  [T]hey did not give me a reason."  (*Id.*)  Separately, in her "Function Report," Plaintiff asserted that she experiences "[p]ain and fatigue [that] limit [her] ability to focus or concentrate as well as physical ability to stand or sit or walk" as well as "[h]and tremors [that] also affect [her] ability to write or type."  (R. at 271.)  Additionally, Plaintiff testified she experiences "[a]nxiety and depression."  (*Id.*)

The ALJ rejected Plaintiff's testimony for five reasons.  First, the ALJ found that "[t]he medical evidence is inconsistent with the degree of limitation asserted."  (R. at 20.)  After making this observation, the ALJ provided an extensive discussion of various pieces of medical evidence and attempted to explain why those pieces of evidence were inconsistent with various aspects of Plaintiff's symptom testimony. (R. at 20-24.) Second, the ALJ found that Plaintiff's symptoms had improved through "medication and treatment."  (R. at 21.  *See also* R. at 23 ["[I]n July 2017, she was discontinued from treatment because of a lack of contact and psychiatric medications made significant improvements."].)  Third, the ALJ found that Plaintiff's testimony was marred by "inconsistencies" because she sought full-time work after the alleged disability onset date and only stopped searching for work after "she came to understand the disability rules." (R. at 22.)  Fourth, the ALJ noted that Plaintiff had been terminated from her most recent job "due to professional disagreements with her supervisors rather than her physical limitations," which the ALJ characterized as inconsistent with Plaintiff's explanation for her job loss.  (R. at 23.)  Fifth, the ALJ found that Plaintiff's activities of daily living—

specifically, "helping friend at a booth," "house sitting/dog sitting," and "caring for an elderly man who lost track of things"—were inconsistent with her symptom testimony. (R. at 23.)

Plaintiff contends the ALJ's rationale for rejecting her symptom testimony was legally insufficient. (Pl. Br. 14-23.) As for the ALJ's first proffered reason (inconsistency with the medical evidence), Plaintiff argues the ALJ offered only a general reference to "some of the alleged symptoms" and failed "to tie-in the characterization of the medical record with any specific symptom testimony." (*Id.* at 15-17.) Plaintiff also contends that the medical evidence related to her mental status and to her gait, muscle strength, and tone was not inconsistent with her testimony related to those symptoms. (*Id.* at 18-20.) As for the ALJ's second proffered reason (improvement from treatment and medication), Plaintiff argues that the record "as a whole" demonstrates that her pain symptoms, depression, and anxiety had not improved with treatment even if they had reached a stable condition. (*Id.* at 17-18.) As for the ALJ's third proffered reason (looking for work during the period of alleged disability), Plaintiff argues that the ALJ mischaracterized her testimony—she was not, in fact, looking for work during this period—and that, more fundamentally, the ALJ's logic was flawed because "a willingness to look for work, and even an attempt to work, are not a basis to denigrate a claimant's disabled status." (R. at 21-22.) As for the ALJ's fourth proffered reason (terminated from last job for reasons unrelated to disability), Plaintiff contends that that ALJ was factually mistaken, because "in this record [Plaintiff] confirmed her impairments caused her to stop working." (R. at 21.) Finally, as for the ALJ's fifth proffered reason (inconsistency with daily activities), Plaintiff argues that helping with house/dog sitting on two instances does not contradict her testimony that her symptoms kept her from working. (R. at 20-21.)

In response, the Commissioner defends the sufficiency of the ALJ's proffered reasons. (Def. Br. 4-10.) Among other things, the Commissioner argues that the ALJ properly discounted Plaintiff's symptom testimony due to inconsistency with the objective evidence from medical examinations; inconsistency with "Plaintiff's improvement from

1   treatment"; inconsistency with Plaintiff's pattern of looking for work; inconsistency with

2   "Plaintiff's reasons for ending her employment"; and inconsistency with Plaintiff's daily

3   activities, including "house sitting, dog sitting, and caring for an elderly man." (*Id.* at 4-

4   6.)

5         In reply, Plaintiff argues that her testimony can form the basis for a disability finding

6   and accuses the Commissioner of failing to respond to some of the arguments in her

7   opening brief. (Reply at 7-10.)

8         An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding

9   pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the

10  ALJ evaluates whether the claimant has presented objective medical evidence of an

11  impairment "which could reasonably be expected to produce the pain or other symptoms

12  alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citation omitted).

13  If so, then "the ALJ can reject the claimant's testimony about the severity of [claimant's]

14  symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*,

15  759 F.3d at 1014-15 (citation omitted). This is the most demanding standard in Social

16  Security cases. *Id.* at 1015.

17        Applying these standards, the Court finds no error. One of the ALJ's proffered

18  reasons for rejecting Plaintiff's testimony was that it was inconsistent with the fact that she

19  had been terminated from the job she held immediately before the period of alleged

20  disability for performance-related reasons unrelated to her impairments. (R. at 23 ["The

21  claimant's employment ended primarily due to professional disagreements with her

22  supervisors rather than her physical limitations. The fact that the employment did not end

23  because of the claimant's impairments is inconsistent with [her assertions]."].) This was a

24  specific, clear and convincing reason for rejecting Plaintiff's testimony for two

25  independent reasons: *first*, because it suggested that Plaintiff retained the ability to work

26  despite her impairments;[1] and *second*, because it suggested that Plaintiff had testified

27  _____

28  [1]     *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (affirming ALJ's rejection of
    symptom testimony in part because the claimant "completed an electronics training course"
    during the period of allegedly disabling symptoms and was unable to find work during a
    different period of allegedly disabling symptoms only "because of a slowdown in the

falsely when she wrote in her "Disability Report" that she stopped working at her prior job because of her impairments.[2]   The ALJ's rationale was also supported by substantial evidence—Plaintiff's prior employer submitted a questionnaire asserting that Plaintiff had been terminated because she "[s]truggled to meet accuracy and thoroughness standards," was "[c]onsistently and publicly vocal in her disagreement with supervisor requests," and displayed "challenges . . . in interactions with supervisors and the expectation of quality." (R. at 313-14.)   Although Plaintiff asserts in her opening brief that there was no inconsistency because she "confirmed her impairments caused her to stop working" (Pl. Br. at 21), it was rational for the ALJ to conclude otherwise.  And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas,* 278 F.3d at 954.

Given this conclusion, it is unnecessary to resolve whether the ALJ's other proffered reasons for rejecting Plaintiff's symptom testimony were also specific, clear and convincing, and supported by substantial evidence.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  *See also Magnotti v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4025959, *4 (D. Ariz. 2021).

## 2.   The Commissioner Concedes Error With Respect To The ALJ's Evaluation Of LPC Deana Charter's Opinions

In September 2019, Plaintiff was evaluated by LPC Charter, who opined in a check-box form entitled "Medical Assessment of Claimant's Ability to Perform Work Related Activities (Mental)" that Plaintiff has various impairments that would preclude her from an eight-hour workday.  (R. at 960-61.)  LPC Charter based her findings in part on the professional counseling she had provided to Plaintiff.  (R. at 961.)

The ALJ concluded that LPC Charter's opinions were "not persuasive" because (1)

---

electronics industry").

[2]   *Smolen*, 80 F.3d at 1284 ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . .").

LPC Charter did "not provide objective evidentiary support for her conclusory opinions" and (2) "[h]er opinions are inconsistent with treatment notes." (R. at 25.)

Plaintiff challenges the sufficiency of the ALJ's rationale for rejecting LPC Charter's opinions. (Pl. Br. at 23-26.) Although Plaintiff acknowledges that, under Ninth Circuit law, the ALJ was only required to provide "germane reasons" for the rejection (because LPC Charter was not considered an "acceptable" medical source under the SSA regulations applicable at the time of her hearing), Plaintiff contends the ALJ failed to meet this standard because (1) it is "error to discount check-box questionnaires" simply due to their check-box nature; and (2) "LPC Charter's treatment notes provided ample support for the assessed limitations." (*Id.*)

The Commissioner's response is puzzling. (Def. Br. at 2-4.) The Commissioner concedes that a remand for further proceedings is necessary because "the ALJ committed legal error by relying on the incorrect regulations to evaluate opinion evidence." (*Id.*) Specifically, the Commissioner contends that "the ALJ evaluated medical opinions . . . under 20 C.F.R. § 404.1520c . . . . However, for all applications filed before March 27, 2017, an ALJ must apply 20 C.F.R. § 404.1527. Plaintiff filed her . . . application on March 17, 2017. The ALJ's self-described application of the other regulation, 20 C.F.R. § 404.1520c, constitutes legal error necessitating remand." (*Id.*)

In reply, Plaintiff argues that the Commissioner's concession of error is "spurious" because nothing in the underlying decision suggests the ALJ applied the wrong regulations—to the contrary, the decision explicitly states that the ALJ applied 20 C.F.R. § 404.1527. (Reply at 4-5.) Plaintiff further notes that the applicable-regulation issue is a red herring here because her challenge to the ALJ's evaluation of LPC Charter's opinions does not turn on the "hierarchy of weight accorded to medical opinion evidence" but instead turns on the "supportability" of LPC Charter's opinion, which remains a relevant consideration under the new regulations. (*Id.* at 5-6.)

The Court shares Plaintiff's confusion with respect to the Commissioner's confession of error. The underlying decision states that "[t]he undersigned also considered

opinion evidence in accordance with the requirements of 20 CFR 404.1527." (R. at 19.) This is the regulation the Commissioner faults the ALJ for not applying. It is unclear why the Commissioner believes the ALJ evaluated the opinion evidence under the wrong set of regulations.

At any rate, because the Commissioner concedes that a remand is necessary and makes no effort to defend the sufficiency of the ALJ's rationale for rejecting LPC Charter's opinions, the Court will not attempt to conduct its own sufficiency review. *Cf. United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation. . . . In short: Courts are essentially passive instruments of government. They do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties.") (cleaned up). Thus, the only question before the Court is whether the remand should be for further proceedings (as the Commissioner suggests) or for an award of benefits (as Plaintiff suggests).

### 3. The Proper Remedy Is A Remand For Further Proceedings

The credit-as-true rule determines whether a case should be remanded for benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three-part test is satisfied. *Id.* First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id.* Next, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id.* Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled. *Id.* Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

In this case, the ordinary remand rule applies. The Court harbors serious doubt as to whether Plaintiff is, in fact, disabled, given that the ALJ permissibly discounted Plaintiff's symptom testimony and the Commissioner failed to defend the sufficiency of

the ALJ's rationale as to the only other issue raised on appeal due to a seemingly mistaken interpretation of the record.

This is not, to be clear, an empty victory for Plaintiff.  The rule in the Ninth Circuit is that a "sentence four" remand for further proceedings in a Social Security appeal, which is the type of remand being ordered here,[3] is a "remand on an open record."  *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).  *Accord Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) ("[E]ven if all three requirements [of the credit-as-true rule] are met, we retain flexibility in determining the appropriate remedy.  We may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.") (citations and internal quotation marks omitted); *Morris v. Comm'r of Soc. Sec.*, 2013 WL 5853272, *2 n.2 (E.D. Mich. 2013) ("[Although] Plaintiff does not request a 'Sentence Six' remand . . . , consistent with my recommendation that the case be remanded for further fact-finding under the fourth sentence of § 405(g), the ALJ may consider [new evidence] as well as the material previously reviewed.").  Thus, by conceding that a remand is warranted, the Commissioner has effectively reopened the record.

…

…

…

…

…

---

[3]      A "sentence four" remand occurs in cases, such as this one, where a Social Security claimant establishes that the ALJ committed legal error in reaching the decision to deny benefits.  *See generally Hoa Hong Van v. Barnhart*, 483 F.3d 600, 605 (9th Cir. 2007) ("[W]e briefly review the statutory authority for both judicial review and remands in Social Security cases.  Pursuant to 42 U.S.C. § 405(g), an individual may seek judicial review in the district court 'after any final decision of the Commissioner of Social Security made after a hearing to which he was a party.'  Once a claimant brings an action under § 405(g), the district court may remand to the Commissioner of Social Security Administration only under sentence four or sentence six of § 405(g).  A remand under sentence four is essentially a determination that the agency erred in some respect in reaching a decision to deny benefits, whereas a remand under sentence six can be ordered only in two particular instances: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency.") (cleaned up).

Accordingly,

**IT IS ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 11th day of March, 2022.

Dominic W. Lanza
United States District Judge